United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALPINE CORPORATION,<br><br>      Plaintiff,<br><br>  v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>      Defendant.<br>_____/ | No. C 05-00984 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO COMPEL** |

On October 12, 2007, the Court heard oral argument on defendant's motion for summary judgment and plaintiff's motion to compel. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court rules as follows.

**BACKGROUND**

On or about May 11, 2003, Gregory McVay was killed while working inside a cooling tower at a Sonoma County geothermal power generation facility owned and operated by plaintiff Calpine Corporation. Complaint for Damages for Wrongful Death and Survival Action, Request for Judicial Notice ex. A ("McVay complaint") at ¶ 13.[1] McVay was employed by Marley Cooling Tower Company, a subcontractor (and subsidiary of SPX Corporation) which had contracted with plaintiff to rebuild the cooling tower at plaintiff's Unit 8 facility. *Id.*; Complaint at ¶ 8. McVay's successor filed suit against plaintiff in state court, alleging that plaintiff's own negligence caused McVay's death. *See* McVay complaint ¶¶ 7, 13.

---

[1] The Court grants defendant's request for judicial notice of the underlying complaint filed by McVay's successors in state court.

After being named as a defendant in McVay's wrongful death suit, plaintiff tendered its defense to Marley and to Marley's insurance company, defendant ACE American Insurance. Complaint ¶ 11-13. Defendant waited over four months to respond to plaintiff's tender of defense. *Id.* ¶ 21. Plaintiff believed defendant had a duty to defend and indemnify plaintiff in the McVay action because plaintiff's contract with Marley required Marley to obtain a policy of liability insurance that named plaintiff as an additional insured. *Id.* ¶ 9. Plaintiff alleges that Marley's insurance should have covered "any and all claims arising out of Marley's performance of work" in rebuilding the cooling tower. *Id.*

Pursuant to its contract with plaintiff, Marley's parent company SPX entered into a commercial general liability insurance contract with defendant, covering the period from January 1, 2003, to January 1, 2004. *See* Policy, Holden Decl. ex. B. Three endorsements to this policy – Endorsements #1, #4, and #17 – state that the policy provides coverage to additional insureds based on contracts or agreements to provide such coverage. Policy, Holden Decl. ex. B. The policy also states, in Endorsements #1 and #4, that coverage for additional insureds is limited to vicarious liability based on Marley's own negligence. *Id.* There is no mention of vicarious liability, however, in Endorsement #17. *Id.*

Plaintiff filed the instant complaint after defendant refused to defend plaintiff in the underlying wrongful death lawsuit. Plaintiff's complaint states claims for breach of written contract and breach of implied covenant of good faith and fair dealing, arising under state law, as well as a claim for declaratory relief arising under federal law. Jurisdiction is proper under 28 U.S.C. § 1332 because plaintiff is a Delaware corporation and defendant is a Pennsylvania corporation, and the amount in controversy exceeds $75,000. Venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in Sonoma County. Now before the Court is defendant's motion for summary judgment, plaintiff's motion to compel discovery, and plaintiff's objections to the admissibility of certain evidence.

## I. MOTION FOR SUMMARY JUDGMENT

### LEGAL STANDARD

"Although this is a diversity case, federal law alone governs whether evidence is sufficient to raise a question for the trier-of-fact." *Bank of Cal. v. Opie*, 663 F.2d 977, 979 (9th Cir. 1981).

2

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e).

**DISCUSSION**

**A.     Breach of contract claim**

Defendant moves for summary judgment on plaintiff's breach of contract claim, arguing that, as a matter of law, the insurance policy purchased by Marley does not provide coverage for plaintiff, as an additional insured, for the death of Gregory McVay. Defendant contends that the insurance policy provides coverage only for claims in which plaintiff is vicariously liable for Marley's negligence, and that the underlying claim brought in state court against plaintiff alleges only direct liability for plaintiff's

3

own negligence. Plaintiff argues in response that the policy covers more than vicarious liability and that, even if the policy is limited to vicarious liability, there is a possibility that plaintiff may be held vicariously liable for Marley's actions.

"When ruling on a summary judgment motion, a federal court sitting in diversity jurisdiction will apply the forum state's rule of decision regarding elements of a state law contract action." *Colo. Structures, Inc. v. N. Am. Capacity Ins. Co.*, No. C 03-2460, 2003 WL 22749021 *3 n.2 (N.D. Cal. 2003) (citing *Bank of Cal.*, 663 F.2d at 980). Despite their special features, insurance policies are subject to ordinary rules of contractual interpretation. *See La Jolla Beach and Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal.4th 27, 37 (1994). "The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). "If contractual language is clear and explicit," *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992), interpreted according to its ordinary and popular meaning, it governs, *Waller*, 11 Cal. 4th. at 18. "Courts will not strain to create an ambiguity where none exists." *Id.* at 18-19. However, when a contract is ambiguous, in that the language is capable of two or more reasonable constructions, extrinsic evidence may be used to interpret it. *See General Star Indem. Co. v. Superior Court*, 47 Cal. App. 4th 1586, 1592-93 (Cal. Ct. App. 1996). Ambiguities are generally construed against the party that caused the uncertainty to exist.[2] *See La Jolla*, 9 Cal.4th at 37-38. The interpretation of a contract is a question of law appropriate for summary judgment. *See Waller*, 11 Cal.4th at 18.

"It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the *potential* for coverage under the insuring agreement." *Id.* at 19 (emphasis added). This duty to defend is broader than the duty to indemnify, and applies even to claims that appear to be without merit. *See id.* However, where the insurer proves that the underlying claim *cannot* fall within policy coverage, *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993), such that "there is no possibility of coverage, there is no

---

[2] The purpose of this rule is to protect against unfair bargaining power on the part of the insurer. *See AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990). However, if there is no unequal bargaining power, and the insured does not lack legal sophistication, less protection is afforded. *See id.* at 823.

4

duty to defend," *Waller*, 11 Cal. 4th at 19 (internal quotation marks omitted). This determination is made "in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id.* Facts extrinsic to the complaint are considered if they either reveal a possibility that the claim may fall within the coverage of the policy, or eliminate the possibility of coverage despite the potential for coverage indicated on the face of the complaint. *Id.*

As an initial matter, the parties present only two disputes over potentially material facts. The first is whether Marley was constructing or repairing and maintaining the cooling tower at the time of the incident. Because this factual dispute is potentially material, the Court will address it briefly. Endorsement #17 explicitly limits insurance coverage for additional insureds to a particular time period, stating that the insurance "does not apply to 'bodily injury' or 'property damage' occurring after . . . [a]ll work . . . on the project (other than service, maintenance or repairs) . . . has been completed." Policy, Holden Decl. ex. B. Thus, Endorsement #17 excludes coverage for injuries occurring after the project has been completed, even if Marley continued to perform work involving service, maintenance, or repairs. Defendant argues that Endorsement #17 excludes coverage for McVay's death because according to McVay's complaint, McVay was killed while "performing maintenance and repairs" inside cooling tower 8-1. McVay complaint at ¶ 13. The Court disagrees. Even assuming McVay was performing maintenance or repair work inside the tower, that fact does not preclude coverage for plaintiff because the plain language of the Endorsement #17 limits coverage based on the status of the project as a whole, rather than on the type of work being performed by a particular employee on the date in question. In other words, even if McVay himself was repairing or maintaining a fan blade at the time of his death, Calpine might still be entitled to coverage if Marley's major "work . . . on the project" was not yet completed. Policy, Holden Decl. ex. B.

In answer to the question of Marley's work status, plaintiff has put forth specific facts showing that there is a genuine dispute as to whether Marley's work on the project was ongoing at the time of the incident. For example, a Calpine employee has stated in a detailed declaration that "[o]n the day of the accident, the cooling tower for Unit 8 had not been completed and had not yet been turned over to Calpine for operation. At the time of the accident, there was still construction being performed on all five cells." Decl. of Kevin Cunningham at ¶ 16. Plaintiff has also pointed to the depositions of two

Marley employees indicating that construction work was ongoing at the time of McVay's death. *See* Decl. of Martin Seeger at exs. D & E. The existence of a genuine factual dispute is not enough, however, to prevent a finding for plaintiff on summary judgment; the factual dispute also must be material. As will be discussed below, the factual dispute regarding Marley's ongoing construction work is not material because, as a legal matter, Endorsement #17 does not provide coverage for plaintiff's own negligence leading to the death of McVay. In other words, the vicarious liability limitation of the insurance policy as a whole is dispositive as to the question of coverage under Endorsement #17, and thus the factual dispute regarding Marley's work is not material.

The same is true of the second factual dispute raised by plaintiff. Plaintiff argues there is a genuine dispute of fact regarding Marley's intent in entering into a continuing services agreement with plaintiff as well as Marley's intent in entering into the insurance contract with defendant. Regardless of the existence of a genuine dispute as to Marley's intent, the dispute is not material because, as will be explained below, the Court's decision rests on the language of the contract and need not resort to extrinsic evidence such as the intent of the parties. As a result, and despite the existence of disputed yet non-material facts, the remaining issues of law are properly before the Court on defendant's motion for summary judgment.

### (1) Endorsements #1 and #4

The parties disagree as to whether Endorsements #1 and #4 to the insurance policy provide coverage for Calpine related to the death of Marley's employee. Endorsement #4 amended the insurance policy to extend coverage to "any person(s) or organization(s) for whom you have agreed in a scheduled written contract to provide insurance," while Endorsement #1 defines the word "insured" as including any entity "to which the Named Insured is obligated by virtue of a written contract or agreement to provide insurance." Policy, Holden Decl. ex. B. Endorsement #4 clarifies that "[t]his insurance does not apply to the negligence, willful or tortuous misconduct of the included person(s) or organization(s) but only to vicarious liability which occurs as a result of your performance of a scheduled written contract." *Id.* Similarly, Endorsement #1 states that the additional insureds are covered "only for [their] vicarious liability." *Id.* As such, these endorsements limit insurance coverage

for parties contracting with Marley to vicarious liability arising out of Marley's own actions. Comparing the terms of these endorsements with the allegations of the underlying complaint, *see Waller*, 11 Cal. 4th at 19 (explaining how courts should determine whether there is a duty to defend), the Court agrees with defendant that defendant owes plaintiff no duty to defend based on the allegations in the underlying complaint. The complaint filed in state court by McVay's successor names only Calpine and its unidentified agents or employees as defendants. McVay Complaint at ¶¶ 1-3, 7. In each of the three causes of action, the complaint alleges that Calpine was directly at fault in McVay's death. *See id.* at ¶ 2, 7, 13, 18. Nowhere does the underlying complaint mention vicarious liability or suggest that Marley or a Marley employee was responsible for McVay's death.

The Court also agrees with defendant that facts extrinsic to the McVay complaint cannot establish the potential for policy coverage for Calpine. McVay's successor has no claim against Marley, McVay's employer, because an employee's remedy against his employer for an injury sustained on the job is limited to the workers' compensation system in place in California. *Torres v. Parkhouse Tire Serv., Inc.*, 26 Cal. 4th 995, 1001 (2001). The California Supreme Court has also explained that the rule of workers' compensation exclusivity extends to the entity that hired the employer pursuant to a contract: "our [prior decision] bars employees of a hired contractor who are injured by the contractor's negligence from seeking recovery against the hiring person." *Toland v. Sunland Housing Group, Inc.*, 18 Cal. 4th 253, 267 (1998). Accordingly, even assuming Marley's own negligence may have caused the death of McVay, Calpine – the entity that hired the contractor Marley – could not be held vicariously liable for Marley's negligence under California workers' compensation law.

Plaintiff agrees that the McVay complaint names only Calpine as a defendant, and appears to concede that it could not be found vicariously liable for Marley's negligence under the traditional understanding of vicarious liability. Plaintiff argues instead that it could possibly be vicariously liable for the acts or omissions of Marley under the doctrine of joint and several liability. That is, plaintiff could be vicariously liable if found to be jointly liable for the entire amount of McVay's economic damages, including any economic damages actually found by the trier of fact to arise out of Marley's own negligence. The Court cannot agree. In construing the meaning of the insurance policy at issue here, the Court is required to look at the language of the contract to ascertain its "plain meaning."

7

*Waller*, 11 Cal. 4th at 18. The plain meaning of "vicarious liability" is "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties." Black's Law Dictionary, 8th ed. (2004). This definition demonstrates two important differences between "vicarious liability" and "joint liability." First, vicarious liability requires an existing relationship between the two parties, whereas joint liability may arise regardless of any relationship between two parties; the only requirement is that both parties must have contributed in some way to the underlying injury. *See Am. Motorcycle Ass'n v. Superior Court*, 20 Cal. 3d 578, 587 (1978). Second, a defendant may be vicariously liable even where the defendant itself has not committed any negligent conduct, whereas joint liability, as stated above, cannot be imposed absent a showing that the conduct of the defendant itself was a proximate cause of the injury. *Id.* Accordingly, under both the plain meaning of the insurance policy and California law, the Court holds that Endorsements #1 and #4 do not provide coverage to plaintiff relating to the McVay complaint.

**(2)     Endorsement #17**

The parties also disagree as to whether Endorsement #17 to the insurance policy provides coverage for Calpine for McVay's death. Endorsement #17 is entitled, in part, "Additional Insured" and states that the insurance contract is "amended to include as an insured the person or organization shown in the Schedule." Policy, Holden Decl. ex. B. The schedule, in turn, states that it applies to persons or organizations "[w]here required by contract." *Id.* The parties do not appear to dispute that Calpine is included in this schedule as an additional insured based on its contract with Marley.[3]

The parties' dispute pertains instead to the question whether the coverage for additional insureds provided by Endorsement #17 is limited to vicarious liability. Defendant argues that as with the prior endorsements, Endorsement #17 limits its additional insured coverage to vicarious liability because it

---

[3] As discussed above, plaintiff has shown that there is a genuine factual dispute as to whether Marley was performing ongoing construction work or only maintenance and repairs at the time of McVay's death. However, this factual dispute is only material and relevant to plaintiff's claim if, as a matter of law, Endorsement #17 covers plaintiff's own negligence and is not limited to vicarious liability.

8

is controlled by the remainder of the policy and does not amend the prior endorsements expressly or impliedly. Plaintiff responds that Endorsement #17 is silent as to vicarious liability and was meant to apply to any liability faced by additional insureds.

The Court agrees with defendant that under California law, Endorsement #17 must be read in conjunction with the insurance policy as a whole. Plaintiff is correct that the plain meaning of Endorsement #17, standing alone, provides broad coverage for additional insureds and lacks any language limiting coverage to vicarious liability. The Court's inquiry does not end there, however. California law holds that an endorsement to an insurance policy "is not a separate contract of insurance. Standing alone, an endorsement means nothing." *Adams v. Explorer Ins. Co.*, 107 Cal. App. 4th 438, 451 (Cal. Ct. App. 2003). Instead, endorsements "form a part of the insurance contract . . . and the policy of insurance with the endorsements and riders thereon must be construed together as a whole," such that "[c]onditions stated in the policy as such apply to the endorsement." *Id.* (internal quotation marks omitted) (citing *Ohio Farmers Indem. Co. v. Interinsurance Exch.*, 266 Cal. App. 2d 772, 777 (Cal. Ct. App. 1968)). Interpreting these cases, this Court has explained that "[u]nless expressly provided, subsequent endorsements do not replace one another outright, but are designed to act in concert. Where a subsequent endorsement adds one condition without expressly modifying another, it cannot be said that the first is eclipsed simply because the latter is given effect." *Colo. Structures*, 2003 WL 22749021 *5 (citing *Adams*, 107 Cal. App. 4th at 451).

Here, Endorsement #17 adds a condition relating to the time period of coverage for additional insureds, but says nothing about the vicarious liability conditions contained in prior endorsements. Policy, Holden Decl. ex. B. Endorsement #17 is also silent about the possibility of coverage extending to additional insureds based on their own negligence. In other words, Endorsement #17 does not expressly or impliedly modify other conditions contained in the insurance policy relating to vicarious liability; it merely adds an additional condition relating not to the type of liability covered but to the period of coverage. *See Colo. Structures*, 2003 WL 22749021 *5. As discussed in detail above, Endorsement #1 and Endorsement #4 both contain conditions limiting coverage for additional insureds

9

1   to vicarious liability.[4] Policy, Holden Decl. ex. B. Absent express modification, California law states
2   that this vicarious liability limitation on coverage for additional insureds necessarily applies to
3   Endorsement #17. *See Adams*, 107 Cal. App. 4th at 451; *Ohio Farmers Indem.*, 266 Cal. App. 2d at
4   777. Even though the more general language of Endorsement #17 might seem to indicate broad
5   coverage for any type of liability, the more specific language regarding vicarious liability found in
6   Endorsements #1 and #4 governs the issue of the scope of coverage for additional insureds. *Jane D. v.
7   Ordinary Mut.*, 32 Cal. App. 4th 643, 651 (Cal. Ct. App. 1995) ("[I]t is also settled that a specific
8   provision relating to a particular subject will govern in respect to that subject, as against a general
9   provision even though the latter, standing alone, would be broad enough to include the subject to which
10  the more specific provision relates." (internal quotation marks omitted)). Plaintiffs have pointed to no
11  other language in the policy itself that would indicate otherwise.

12  Because the plain language of Endorsement #17 does not alter or amend the vicarious liability
13  condition expressed elsewhere in the policy, California law holds that the Court need not look beyond
14  the policy itself to determine its meaning. *See Bank of the West*, 2 Cal. 4th at 1264; *Waller*, 11 Cal. 4th.
15  at 18-19. Although the parties debate at length the meaning and admissibility of extrinsic evidence of
16  the parties' intentions – such as the deposition testimony of employees of Calpine and SPX, as well as
17  agreements and communications between Calpine and Marley – it is unnecessary to examine this
18  extrinsic evidence because the insurance policy is not ambiguous.[5] Endorsements #1 and #4 are "clear

---

[4] Plaintiff argues, in the declaration of Martin Seeger filed September 21, 2007, that Endorsement #4 does not apply to plaintiff as an additional insured because it applies only where the written contract between Calpine and Marley is "scheduled" or "listed" with the insurance underwriter. Plaintiff argues that because its contract with Marley was not found in defendant's underwriting file, it was not a "scheduled" contract and cannot be limited by Endorsement #4. The Court is skeptical of this argument because plaintiff provides no support for its contention that a "scheduled written contract," Policy, Holden Decl. ex. B., means only those contracts actually on file with the underwriter. Regardless, there is no need for the Court to reach this question because, as defendant points out, Endorsement #1 is not limited to "scheduled" contracts. Endorsement #1 defines the word "insured" as including additional entities to which Marley "is obligated by virtue of a written contract or agreement to provide insurance," and explicitly limits such coverage to vicarious liability. Policy, Holden Decl. ex. B. Thus, even assuming Endorsement #4 does not apply to plaintiff, Endorsement #1 surely does, and plaintiff has not argued otherwise.

[5] For this reason, the Court overrules as moot plaintiff's objections to portions of the declaration of Carol Dean Brocci submitted by defendant. The evidence at issue in plaintiff's objections is extrinsic evidence regarding the intentions of the parties and is not relied on by the Court in light of the plain

10

1  and explicit," *Bank of the West*, 2 Cal. 4th at 1264, that coverage for additional insureds is limited to
2  vicarious liability, and this limitation extends, under the California law of insurance contracts, to
3  Endorsement #17, which does not in any way reference or modify this limitation. Accordingly, because
4  there is no potential for vicarious liability in the underlying complaint, Endorsement #17 does not create
5  a duty to defend plaintiff in the action brought on behalf of McVay, and defendant has not breached its
6  contract.

### B.  Additional claims

Because the Court finds that the insurance policy does not provide for coverage for plaintiff under these circumstances and does not require defendant to defend plaintiff in the underlying lawsuit, the Court also grants defendant's motion for summary judgment as to plaintiff's other, related claims. In the absence of the potential for coverage and a duty to defend, plaintiff has no claim for breach of the implied covenant of good faith and fair dealing. *Waller*, 11 Cal. 4th at 36; *Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 244 F.3d 715, 720 (9th Cir. 2001). In addition, plaintiff's claim for declaratory relief is denied because plaintiff is not covered by Marley's insurance policy for the purposes of the underlying lawsuit.

## II.  MOTION TO COMPEL

### LEGAL STANDARD

Discovery under Federal Rules of Civil Procedure is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Fed. R. Civ. P. 26(b)(1). For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. *Id.*

Depositions are generally available without leave of the court. Fed. R. Civ. P. 30(a)(1). Any party may depose "any person, including a party." *Id.* Where a party seeks to depose a corporation, the

---

meaning of the contract.

11

corporation shall designate a person to testify to matters "known or reasonably available" to the corporation. Fed. R. Civ. P. 30(b)(6). The answers given by the person designated by the corporation in a Rule 30(b)(6) deposition are binding on the corporation. Judge William W. Schwarzer, Judge A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* 11:1517.1 (Rutter Group Practice Guide 2006).

A motion to compel is appropriate when "a deponent fails to answer a question propounded or submitted under [Federal Rule of Civil Procedure] 30." Fed. R. Civ. P. 37(a)(2)(B). The movant must certify that it has in good faith conferred or attempted to confer with the party failing to make discovery in an effort to secure information or material without court action. *Id.*; *see* Civil L.R. 37-1.

If a motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay the moving party the reasonable expenses incurred in making the motion, including reasonable attorney's fees, unless it finds the opposition was "substantially justified" or other circumstances make such award "unjust." Fed. R. Civ. P. 37(a)(4)(A). In addition, "[i]f the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof." Fed. R. Civ. P. 30(d)(3).

**DISCUSSION**

Plaintiff moves to compel further deposition testimony from Peter McEnery, an employee of defendant ACE designated by defendant as the "person most knowledgeable" of the insurance policy in effect at the time of accident. Plaintiff also requests monetary sanctions in the amount of $3,670 to cover the expenses of plaintiff's attorney in connection with his attempt to depose McEnery. Defendant in turn moves for a protective order directing plaintiff to limit its deposition of McEnery to the subjects already discussed at McEnery's deposition.

This dispute arises out of plaintiff's deposition of McEnery in Illinois on June 22, 2007. Plaintiff intended to depose McEnery on two general areas of interest: (1) which documents formed the insurance contract between defendant and defendant's insured, Marley; and (2) "the meaning and extent of the insurance policy in dispute by the parties." Motion to Compel at 7:20-21. Although the deposition

proceeded as planned with respect to the first area of inquiry, defendant instructed McEnery not to answer questions regarding the second area of inquiry, i.e. McEnery's interpretation of the insurance policy. Plaintiff now asks the Court to compel a second deposition to permit plaintiff to question McEnery with regard to his understanding of the policy, while defendant asks the Court to prevent such questioning.

Plaintiff argues that it had a right under Rule 26(b)(1) to discovery related to defendant's understanding of the terms of the policy because this evidence is relevant. Plaintiff is correct that such evidence is discoverable under the Federal Rules of Civil Procedure because McEnery's interpretation of the insurance policy would be relevant to the parties' understanding of the terms of the contract. The parties stipulated, however, to pursue discovery in phases. In their Joint Case Management Conference Statement, the parties agreed to a first phase of discovery that includes "initial disclosures made in accordance with Federal Rule of Civil Procedure 26(a)(1)," Joint Case Management Statement at 5:1-2 [Docket # 35], as well as "deposition(s) of Defendant's underwriter for purposes of ascertaining the complete set of documents that constitute Marley's contract of insurance," *id.* at 5:4-6 (emphasis added). At the time of McEnery's deposition, the parties were in the first phase of discovery, because the second phase was scheduled to begin only after the Court decided the parties' cross-motions for summary judgment. *See id.* at 5:12-13. In contrast to the first phase, this second phase would include "appropriate depositions" not limited in scope by the parties' stipulations. *Id.* at 5:16.

Because the parties were still in the first phase of discovery at the time of the deposition in question, the Court agrees with defendant that plaintiff was not entitled to depose McEnery for any purpose other than ascertaining the complete set of documents comprising the insurance policy. Plaintiff's argument that the Minute Order enlarged the scope of permissible discovery in the first phase is unavailing. That order states that "[t]he person most knowledgeable on the defense may be deposed prior to filing the summary judgment motion." This order is simply shorthand for what the parties had already agreed to in their Joint Case Management Statement drafted in preparation for the pretrial conference on February 23, 2007. At the time of the McEnery deposition in June 2007 – prior to the expansion of discovery permitted by the Court on August 2, 2007 [Docket # 53] – plaintiff was not free to depose defendant regarding the meaning of the insurance policy. Accordingly, the Court DENIES

plaintiff's motion to compel and request for monetary sanctions and DENIES as moot defendant's motion for a protective order.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment [Docket #42] and OVERRULES as moot plaintiff's objections to certain evidence submitted by defendant [Docket #70]. In addition, the Court DENIES plaintiff's motion to compel discovery and request for sanctions [Docket #41] and DENIES as moot defendant's motion for a protective order [Docket #48].

**IT IS SO ORDERED.**

Dated: October 12 , 2007

SUSAN ILLSTON
United States District Judge